**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LESLIE C. SWIACKI,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | * | **Case No. 09-348-C** |
| **WILLIAM A. SWIACKI, JR.,** | * | |
| **SWIACKI TRUST MANAGEMENT** | * | |
| **COMPANY, DRAPER WOODS** | * | |
| **DEVELOPMENT, LLC, and MARK W.** | * | |
| **JUDSON,** | * | |
| | * | |
| **Defendants.** | * | |

**PLAINTIFF'S REPLY BRIEF IN RESPONSE TO**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Leslie C. Swiacki ("Leslie") replies as follows to Defendant William A. Swiacki, Jr.'s ("Bill") Response to Motion for Partial Summary Judgment:

Bill appears not to dispute that there is an executed promissory note and personal guarantee, or that he owes the debt, but instead attempts to confuse the Court with facts that are not relevant and law that is misapplied regarding whether summary judgment is appropriate.

**STANDARD**

In responding to a summary judgment motion, "the non-moving party must produce substantial evidence in order to defeat [the] motion . . . ." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). "A 'mere scintilla' of evidence is insufficient . . . . Furthermore, summary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'" *See id.* (citations omitted) (emphasis in original). The non-movant cannot rely on the pleadings alone. *See Allen v. Bd. of*

*Pub. Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007). "Summary judgment is required where the non-mov[ant]'s response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial." *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001).

<u>**ARGUMENT**</u>

Leslie's Motion for Partial Summary Judgment is due to be granted as to Bill because (1) the federal best evidence rule has been complied with and thus the promissory note presented by Leslie represents a true, accurate, and correct copy of the promissory note that was signed and agreed to by all relevant parties, and (2) it is undisputed that the promissory note was breached by nonpayment and that Bill is now liable pursuant to his personal guarantee.

**I.      BEST EVIDENCE RULE**

**A.      Federal Best Evidence Rule, Not Virginia is Applicable.**

The majority of Bill's brief is spent discussing the Virginia best evidence rule; however, it is the federal rule, not the Virginia rule, that is applicable in this case. Since the advent of the Federal Rules of Evidence, federal rules have governed admissibility of evidence questions, even in diversity cases. *E.g., Sturm v. Clark Equip. Co.*, 547 F.Supp. 144, 145 (W.D. Mo. 1982); *Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004); *King v. Ill. Cent. R.R.*, 337 F.3d 550, 555 (5th Cir. 2003). More specifically, federal law governs the admissibility of evidence for purposes of deciding a summary judgment motion. *E.g., Pender v. United States*, 866 F.Supp. 1129, 1133 (N.D. Ind. 1994). As such, this Court need not consider Virginia's best evidence rule.

### B.     Application of the Federal Rule to this Case

Generally, to prove the content of a writing, the original writing is required. *See* FED. R. EVID. 1002.  However, Federal Rule of Evidence 1004 provides an exception to this rule and holds that "[t]he original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll  originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."  *See also Klein v. Frank*, 534 F.2d 1104, 1107-08 (5th Cir. 1976) ("If the party relying upon the writing can prove that a writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and can present secondary evidence of its contents."); *U.S. v. Tyson*, 470 F.2d 381, 385-86 (D.C. Cir. 1972) ("[I]t is familiar law that the best evidence rule permits the use of secondary evidence . . . when the "best" evidence cannot be found.").  Accordingly, "if failure to produce the original is satisfactorily explained, secondary evidence is admissible." FED. R. EVID. 1004 advisory committee's note. "While there is no fixed measure of the degree of diligence required in making search for a lost document before being entitled to introduce secondary evidence in respect to its existence and content, it would seem that good faith on the part of the party alleging the loss would require such reasonable search as the nature of the case would suggest." *Rash v. Peoples Deposit Bank & Trust Co.*, 91 F. Supp. 825, 827 (D. Ky. 1950) (*citing Simpson & Co. v. Dall*, 70 U.S. 460, 468 (1865)).

Bill has not made any allegations that Leslie has lost or destroyed the document in bad faith, and Leslie has already stated in her affidavit that:

> On or about June 21, 2004, I, Draper Woods, Bill, and Judson entered into a Promissory Note, a true, accurate, and correct copy of which is attached hereto as Exhibit A.  I attempted, but I could not locate in my records the executed copy of the Promissory Note, but Exhibit A is a true, accurate, and correct copy of the Promissory Note that was signed by all parties.

(Affidavit of Leslie Swiacki ¶ 4, attached as Exhibit A to the Brief in Support of Motion for Partial Summary Judgment [Doc 35]).

Moreover, Bill has at all times pertinent to the issues at bar been in possession of a majority, if not all, the documentation in any way related to Leslie's financial involvement with her brother.  In fact, as stated in the Complaint, after Bill had Leslie involuntarily committed he entered Leslie's home and removed the few financial documents that she did have in her possession.  Thus, if Leslie ever did have possession of the promissory note, it is possible he took her copy at that time.  Regardless of how it was lost, Leslie has in good faith exhausted, in a reasonable degree, all the locations and sources of information which the nature of this case would naturally suggest, and which were readily available to her.  As established in his affidavit, even Bill cannot locate an executed copy of the promissory note in spite of the fact that he is the one who drafted and negotiated the terms of the overall transaction.  (Response of William A. Swiacki, Jr. to Motion for Partial Summary Judgment by Leslie C. Swiacki at 2 [Doc. 54] (hereinafter "Bill's Response"); Affidavit of William A. Swiacki, Jr. [Doc. 54-2] ¶¶ 8, 10 (hereinafter "Bill's Affidavit")).

Leslie cannot locate the document at this time, and she did not lose or destroy the document in bad faith.  As indicated above, it is possible, and much more likely, that *Bill* may have lost or destroyed the document in bad faith.  Accordingly, pursuant to the Federal Rule of Evidence 1004 the original promissory note is not required to be produced and secondary evidence of the contents of the note is admissible.

### C.    Secondary Evidence of Promissory Note

Bill admits that he and Leslie made a loan to Draper Woods Development, LLC ("Draper Woods") (Bill's Affidavit ¶¶ 2-4, 6-10), that a promissory note documenting that loan does in

fact exist (*Id.* at ¶ 11), and that he was the one that drafted and negotiated the terms of the promissory note. (Bill's Response at 2; Bill's Affidavit ¶ 8).  Bill also admits that as a co-manager of Draper Woods he executed a mortgage in favor of himself and Leslie to secure payment of this promissory note. (Bill's Affidavit ¶¶ 6, 8, 9 & Fn 6).

The mortgage referred to by Bill and attached to Leslie's Brief in Support of Motion for Partial Summary Judgment as Exhibit 1-A, states that such mortgage is meant to "secure the payment of $480,000 at the times, in the manner and with interest, all as provided in *a certain note of even date*."  Thus, the mortgage, which Bill signed and acknowledged, confirms that the promissory note exists and was in fact executed on June 21, 2004.  (*See also* Answer to Amended Complaint by William A. Swiacki, Jr. [Doc. 28] ¶ 40).

Furthermore, the Promissory Note Extension and the Loan Modification Agreement, which were both negotiated and signed by Bill, reference "that certain Promissory Note dated June 21, 2004," and each state that "[a]ll other terms of said Promissory Note are hereby ratified and confirmed."  Bill also admits making payments to Leslie in repayment of this loan. (Bill's Affidavit, fn. 2).  Lastly, when counsel for Leslie requested a copy of the promissory note representing the Draper Woods loan, the promissory note now propounded by Leslie is what was provided to her by Bill's counsel as representing said note.  (Affidavit of Robert J. Riccio, attached hereto as Exhibit A).  Unexecuted copies of the Promissory Note Extension and the Loan Modification Agreement were also provided, followed a week later by executed copies of said documents the terms of which were identical to the unexecuted copies previously provided. (Affidavit of Robert J. Riccio ¶ 5, Exhibit A).

Thus, if the promissory note currently presented by Leslie was merely a superseded draft copy of the actual note or the terms contained therein were in any way inaccurate, Bill could

have easily refuted Leslie's assertions by merely perusing his own files or by simply placing a

phone call to his attorney.  After all, by Bill's own admission he is the one who negotiated the

terms and drafted the document, and therefore he and/or his attorney are in the best position to

make such a showing.  Yet Bill's motion and supporting affidavit offer no evidence to show that

the terms of the promissory note are anything other than what Leslie has presented.  In

opposition to a motion for summary judgment, the opposing party "must . . . set out *specific* facts

showing a genuine issue for trial."  FED. R. CIV. P. 56(e)(2).  No such facts were presented, and

therefore there are no genuine issues of fact to be determined at trial.  Accordingly, the

unexecuted copy of the promissory note offered by Leslie should be considered as a true,

accurate, and correct copy of the promissory note that was signed and agreed to by all parties.

## II.   UNDISPUTED MATERIAL FACTS DEMONSTRATE BILL OWES LESLIE

A plaintiff can establish a breach of contract claim by showing "(1) the existence of a

valid contract binding the parties in the action, (2) his own performance under the contract, (3)

the defendant's nonperformance, and (4) damages." *Southern Medical Health Systems, Inc. v.*

*Vaughn*, 669 So. 2d 98, 99 (Ala. 1995); *see also Singarella v. City of Boston*, 173 N.E. 2d 290,

291 (Mass. 1961); *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009).[1]

---

[1] In determining which law to apply, a federal district court sitting in diversity must apply the choice of law rules of the forum state.  *Trumpet Vine Investments v. Union Capital Partners, I, Inc.*, 92 F.3d 1110 (11th Cir. 1996).  The law of the forum governs procedural issues and remedies in Alabama.  *Fitzgerald v. Austin*, 715 So.2d 795, 798 (Ala. Civ. App. 1997); *Connell v. United States Steel Corp.*, 516 F.2d 401, 408 (5th Cir. 1975).  In determining which law to apply, a federal district court sitting in diversity must apply the choice of law rules of the forum state. *Trumpet Vine Investments v. Union Capital Partners, I, Inc.*, 92 F.3d 1110 (11th Cir. 1996).  Alabama follows the principle of *lex loci contractus*, which states that interpretation of a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. *See Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 2009 WL 280457 at *12 (Ala. Feb. 6, 2009); *Macey v. Crum*, 249 Ala. 249, 30 So. 2d 666 (1947); *J. R. Watkins Co. v. Hill*, 214 Ala. 507, 108 So. 244 (1926).  Because Alabama law provides that the law of the state where the contract was executed shall govern interpretation of the contract, the last act necessary to the execution of the Note is the determining factor in this analysis.  *Industrial Chemical & Fiberglass Corp. v. The North River Ins. Co.*, 908 F.2d 825 (11th Cir. 1990). It appears from Bill's affidavit that that place is Massachusetts.  However, under either Alabama and/or Massachusetts and/or Virginia substantive law, Leslie is entitled to summary judgment.

### A.      Existence and Validity of a Binding Contract

It is undisputed by Bill that "a promissory note dated June 21, 2004 from Draper Woods Development, L.L.C. in favor of William A. Swiacki, Jr. and Leslie C. Swiacki evidences the debt . . . ." (Answer to Amended Complaint by William A. Swiacki, Jr. [Doc. 28] ¶ 40).  It is also undisputed that Bill does in fact owe Leslie money under the terms of said promissory note, which includes a personal guarantee from Bill.  (*See* Response of William Swiacki at 2 ("While not denying the existence of the document, Bill Swiacki says he has been unable to . . . determine the amount which is owed.")).   As established above, there is also no question that the promissory note presented by Leslie sets out the contractual terms of that debt and represents a complete integration of the parties' agreement.  Bill has not offered any proof, nor has he even contended that the terms of the promissory note are not as he or his counsel originally drafted them.  Therefore, it is undisputed that the promissory note is a valid contract binding the parties in the action.

### B.      Leslie's Performance Under the Contract

Leslie has fully performed under the terms of the promissory note by transferring her interest in the subject property to Draper Woods under that certain Quitclaim Deed dated June 9, 2004, by and among Leslie S. Bailey, George S. Bailey, Jeanne Gengler Swiacki, William A. Swiacki, Jr, and Draper Woods Development, LLC, and recorded in Worcester Registry of Deeds, Book 33926, Page 305.  Bill has not provided evidence of Leslie's nonperformance, nor has he contended that she has not performed under the terms of the promissory note.[2]

---

[2] Bill's argument that Leslie is in default under the mortgage because she should have released part of the property securing the debt owed to her is frivolous.  Pursuant to the terms of the mortgage she is under no such obligation if Draper Woods is in default.  The note was in default, and continues to be in default.  That is not in dispute.  (*See* Bill's Affidavit, ¶¶ 9, 11; *see also* Leslie's Brief in Support of Motion for Partial Summary Judgment, Exhibit 1-A at pg. 8 of 17 (waiving all demand and notice requirements in connection with performance, default, or enforcement of the note)).  Moreover, after making a request for written assurances that Leslie's loan would be paid in full, Bill's counsel provided the following written response: "I am quite certain that there are no funds to pay your client under

### C.      Bill's Nonperformance

It is undisputed that interest payments were required in 2008 and 2009 pursuant to the terms of the promissory note, and the entire unpaid balance of principal and interest was due and payable on August 15, 2009. (Bill's Affidavit ¶ 9).  It is also undisputed that no payments have been received since 2007.  Since it is also undisputed that Draper Woods was the primary obligor on the note and payment of the note was personally guaranteed by Bill, both Draper Woods and Bill are in breach of contract.

### D.      Damages

Bill has not presented any evidence to dispute the damages claimed by Leslie, and, as discussed above, if the terms of the promissory note or calculation of damages were anything other than what was presented by Leslie, Bill would have been able to present such evidence given that he was the one that negotiated and drafted the document.  But "even if there is a genuine issue on the amount of damages," "an interlocutory summary judgment may be rendered on liability alone." FED. R. CIV. P. 56(d)(2).

For the above reasons, Leslie moves this Court to grant her Motion for Partial Summary Judgment with respect to the claims and provide her with the relief requested as to Defendant William A. Swiacki, Jr. and Draper Woods Development, LLC.[3]

---

the documents."  (Affidavit of David R. Quittmeyer, attached hereto as Exhibit B).  Shortly after this statement was made, Bill requested that Leslie sign a partial release of her mortgage.  *Id.*  Thus, Bill made his demand for Leslie's release knowing that the loan was in default and that he had no intention of paying Leslie what she was due.  Once again, this shows how Bill tried to control business matters for his own personal benefit regardless of whether or not it was in Leslie's best interest.

[3] Draper Woods was properly served and has made an appearance in this case.  In its capacity as primary obligor on the promissory note, Draper Woods is not contesting the whether the unexecuted promissory note is a true, accurate, and correct copy of the actual promissory note or the validity and terms of the promissory note presented, and it is not contesting its liability or the amount of its liability thereunder.  Since it has not disputed any element of Leslie's motion for partial summary judgment, entry of judgment against Draper Woods should be a certainty.

Respectfully submitted,

*/s/ David R. Quittmeyer*
DAVID R. QUITTMEYER (QUITD2630)
KATIE L. HAMMETT (HAMMK7587)
*Attorneys for Leslie C. Swiacki*

OF COUNSEL:

HAND ARENDALL LLC
Post Office Box 123
Mobile, Alabama   36601
Phone:  (251) 694-6224
Fax:  (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

C. Robert Gottlieb, Jr. (*RGottlieblaw@aol.com*)
P.O. Box 9820
Mobile, AL 36691
*Attorney for William A. Swiacki, Jr.*

Walter M. Cook, Jr. (*wmc@lpclaw.com*)
Robert Christopher Matthews (*rcm@lpclaw.com*)
Lyons, Pipes & Cook
P.O. Box 2727
Mobile, AL 36652
*Attorneys for Swiacki Trust Management Company*

*/s/ David R. Quittmeyer*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LESLIE C. SWIACKI,                                    *
                                                      *
          Plaintiff,                                  *
                                                      *
v.                                                    *
                                                      *
WILLIAM A. SWIACKI, JR.,                              *        Case No. 09-348-WS
SWIACKI TRUST MANAGEMENT                              *
COMPANY, DRAPER WOODS                                 *
DEVELOPMENT, LLC, and MARK W.                         *
JUDSON,                                               *
                                                      *
          Defendants.                                 *

**AFFIDAVIT IN SUPPORT OF
PLAINTIFF'S REPLY BRIEF IN RESPONSE TO
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

STATE OF ALABAMA        :

COUNTY OF MOBILE        :

          Appearing before me, Robert J. Riccio, who being by me first duly sworn, stated on his

oath as follows:

          1.        I am an attorney representing Plaintiff, Leslie C. Swiacki, and I have personal

knowledge of the facts set out herein.

          2.        On January 23, 2009, I spoke with Bill Swiacki's counsel, Robert C. Matthews,

and requested copies of all documents related to the loan Leslie and Bill made to Draper Woods,

specifically including a copy of the promissory note.

          3.        In response to my request, Mr. Matthews provided the documents attached hereto

as Exhibit A-1 in an e-mail he sent to me on January 23, 2009.  Such documents include an

unexecuted copy of the Loan Modification Agreement, an unexecuted copy of the Promissory

Note Extension, an unexecuted copy of the Promissory Note, and recorded copies of the Mortgage and Subordination Agreement.

       4.      On February 3, 2009, Mr. Matthews sent a follow-up e-mail attaching an executed copy of the Loan Modification Agreement and a partially executed copy of the Promissory Note Extension, copies of which are attached hereto as Exhibit A-2.

       5.      I carefully compared the unexecuted and executed copies of the Loan Modification Agreement and found the terms of each document to be identical.  I also carefully compared the unexecuted and partially executed copies of the Promissory Note Extension and found the terms of each document to be identical.

FURTHER Affiant sayeth not.

ROBERT J. RICCIO

SWORN TO and SUBSCRIBED before me this 15th day of January, 2010.

NOTARY PUBLIC

[SEAL]

My Commission Expires: 12-20- ...ii, State of Alabama at Larg... ...ssion Expires: 12/20/2011 ... through Western Surety Company

1034196_1

# EXHIBIT A-1

**Bob Riccio**

| | |
|---|---|
| **From:** | Robert Matthews [RCM@lpclaw.com] |
| **Sent:** | Friday, January 23, 2009 1:17 PM |
| **To:** | Bob Riccio |
| **Subject:** | Leslie Swiacki with Draper Woods, LLC |
| **Attachments:** | DW PMMLoanModAgrt(form).pdf; DW PMMNoteExtension(form).pdf; DW PMMPromNote(DWD-LSB&WAS)rev01(form).pdf; WDRD111320 (WAS-LSB PMMdeed).tif; WDRD137261 (WAS-LSB PMM2005Subord).tif |

Bob,

It was a pleasure speaking with you this morning.  Please find attached some of the relevant documents related to the development I described to you earlier today.  Bill appears to have done an excellent job in the past on behalf of the noteholders.  We can get more specific in a few weeks after Draper has negotiated the refi.   At that time, it will be necessary for us to meet on behalf of both our clients, and discuss what our position will be with regard to the terms Draper receives from the primary lender.

Best regards,
Robert Matthews

# Lyons, Pipes & Cook
**Robert C. Matthews, Esq.**
2 North Royal Street
Mobile, AL 36602
- direct    251.441.8219
- main      251.432.4481
- fax       251.433.1820

Visit our website www.LPClaw.com

**CIRCULAR 230 NOTICE**
TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY STATEMENTS CONTAINED IN THIS DOCUMENT (INCLUDING ANY ATTACHMENTS) ARE NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY YOU OR ANY OTHER TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER FEDERAL TAX LAW.

Confidentiality Note   Our Firm   Practice Areas   Attorneys   Clients   Publications   Employment   Seminars

## LOAN MODIFICATION AGREEMENT

For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** (also known as **LESLIE C. SWIACKI**) and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note dated June 21, 2004 in the principal amount of $480,000.00 hereby agree that (a) the maturity date therein shall be extended to August 15, 2009, and (b) Exhibit B to said Note shall be deleted in its entirety and be replaced by the revised Exhibit B attached hereto and made part hereof.

All other terms of said Promissory Note are hereby ratified and confirmed.

This agreement may be executed in counterparts, which, taken in the aggregate, shall constitute an original agreement.

WITNESS our hands and seals this 14th day of May, 2008.

DRAPER WOODS DEVELOPMENT, LLC

_____     By:_____
Witness                                       Mark W. Judson, Manager

_____     By:_____
Witness                                       William A. Swiacki, Jr., Manager


_____     _____
Witness                                       Leslie S. Bailey (a/k/a Leslie C. Swiacki)


_____     _____
Witness                                       William A. Swiacki, Jr.

**EXHIBIT B**
**LOT RELEASE PAYMENTS**
(as revised May 14, 2008)

For so long as there are any outstanding amounts due under the terms of the Note, the amount to be paid for the release of each finished building lot within Phases 2 and 3 of the Draper Woods Subdivision shall be determined as follows:

> 100% of Net Sales Proceeds Available for Junior Loan Repayment ("Available Junior Proceeds"), as defined below, from the sale of each such finished building lot sold.

For each such finished building lot sold, Available Junior Proceeds shall equal 100% of Net Sales Proceeds After Senior Loan Repayment, where Net Sales Proceeds After Senior Loan Repayment equals the total sales price of the finished building lot minus Selling Expenses and Senior Loan Payments. Selling Expenses shall include usual and customary closing expenses, including Registry of Deeds tax stamps and recording fees, legal expenses related to preparation of sales documents and closing, and sales commissions. Senior Loan Payments shall include required lot release payments on any and all senior mortgage loans, including but not limited to the payment of any amounts due at closing of such lot under the terms of (a) an existing loan agreement with Hometown Bank dated August 18, 2005, modified on October 18, 2007, and secured by a mortgage recorded in Worcester District Registry of Deeds ("WDRD") Book 37100, Page 53, and (b) an existing mortgage note to Keniston Development Corporation dated October 31, 2003, modified on March 3, 2008, and secured by a mortgage recorded in WDRD Book 32174, Page 134.

Lot release payments shall be paid at the time of closing on each lot, and shall be applied first to accumulated interest on the outstanding balance of the loan and then to the outstanding principal balance of the loan.

## COMMONWEALTH OF VIRGINIA

Fairfax, ss

      On this _____ day of _____, 2008, before me, the undersigned notary public, personally appeared William A., Swiacki, Jr., proved to me through satisfactory evidence of identification, which was through personal knowledge / state-issued driver's license / other:_____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose individually, as attorney-in-fact for Leslie S. Bailey (a/k/a Leslie C. Swiacki), and as Manager of Draper Woods.Development, LLC.

 

_____
                                             , Notary Public

               My Commission Expires:

*(Seal)*

PROMISSORY NOTE EXTENSION

For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note dated June 21, 2004 in the principal amount of $480,000.00 hereby agree that the maturity date therein shall be extended to August _____, 2007.

All other terms of said Promissory Note are hereby ratified and confirmed.

WITNESS our hands and seals this _____ day of August, 2005.

DRAPER WOODS DEVELOPMENT, LLC

By_____
    Mark W. Judson, Manager

By_____
    William A. Swiacki, Jr., Manager


_____
Leslie S. Bailey


_____
William A. Swiacki, Jr.

## PROMISSORY NOTE

**$480,000.00**                                              Sturbridge, Massachusetts

                                                             June _____, 2004

FOR VALUE RECEIVED, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC**, a Massachusetts limited liability company, with its principal office at 54 Main Street, 2nd Floor, Sturbridge, Worcester County, Commonwealth of Massachusetts (the "maker") promises to pay to **LESLIE S. BAILEY**, of 11800 Champion Road, Fairhope, Baldwin County, State of Alabama, and **WILLIAM A. SWIACKI, JR.**, of 938 Leigh Mill Road, Great Falls, Fairfax County, Commonwealth of Virginia, AS TENANTS IN COMMON (the "payee"), or order in care of William A. Swiacki, Jr., 1501 Farm Credit Drive, Suite 2500, McLean, Virginia 22102 or such other places as may be designated in writing by the holder of this Note, the principal sum of **Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.00)**, as follows: (a) One Hundred Thousand and 00/100 Dollars ($100,000.00) in thirty (30) days (i.e., on or before July _____, 2004), and (b) Three Hundred Eighty Thousand and 00/100 Dollars ($380,000.00) in twenty-four (24) months (i.e., on or before June _____, 2006), all with interest on the unpaid balance from the date hereof at the rate of ten percent (10%) per annum, which interest is payable annually on the unpaid balance until fully paid. The entire principal balance, together with any interest then unpaid, is due twenty-four (24) months from the date hereof.

This NOTE may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall be applied first to interest, then to principal payments in the order of their maturity. With reference to Paragraph 16 of the below-referenced mortgage, (a) the amount required for release of individual finished building lots within Phases 2 and 3 of the Draper Woods Subdivision, said Phase 2 and Phase 3 lots being Lots 15-45, inclusive, as more particularly described in Exhibit A attached hereto and made part hereof, shall be as set forth in

Exhibit B attached hereto and made part hereof, and (b) the amount required for release of Lot 46 as more particularly described in said Exhibit A shall be the principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) plus accrued interest on said principal amount.

This NOTE shall, at the option of the holder, become immediately due payable without notice or demand by the holder to the maker upon the occurrence of any of the following events:

1.      Failure of the maker to pay when due any payment of principal or interest herein required;

2.      Default, continuing for more than thirty (30) days by the maker, under any mortgage, agreement or undertaking securing in any way the indebtedness hereby evidenced or given in connection herewith;

3.      Default under any prior mortgage encumbering the Premises not cured within the applicable grace periods;

4.      Death, dissolution or termination of existence of the maker or of any endorser or guarantor hereon;

5.      The making of an assignment for the benefit of creditors, insolvency, appointment of a receiver of any part of the property of, or the filing of a petition in bankruptcy, or the commencement of any proceedings under any bankruptcy or insolvency law or any law relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension, by or against the maker or any endorser or guarantor hereon.

While any default exists in the making of any payments required by this Note (including final payment upon maturity) or in the performance or observance of any of the covenants, agreements or conditions of this Note or of any instrument now or hereafter evidencing or securing the indebtedness evidence hereby, the maker further promises to pay, on each payment

DW Note (DWD-LSB&WAS)rev01.doc

date, an additional five percent (5%) on the amount then due and in arrears and the payment of such additional amount which has accrued shall be a condition precedent to the curing of any default.

The maker and all endorsers and guarantors of the Note hereby waive presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, generally waive all suretyship defenses, assent to any extension or postponement of the time of payment or any other indulgences and to the addition or release of any party or person primarily or secondary liable including the maker.

The maker and all endorsers and guarantors of this Note hereby assent to the release in whole or in part of any collateral held by the payee of this Note as security for the payment of this Note.

The rights, powers, privileges and remedies of the holder of this Note are cumulative and not exclusive of any right, power, remedies and privileges which the holder might have under any other agreement now in effect or hereafter entered into between the maker and the payee and the failure to assert any power, right or remedy shall not be deemed to be a waiver or election.

This Note is transferable by any holder by endorsement or assignment in writing.  The holder of this Note may negotiate, assign and transfer this Note and may deliver all or any part of the collateral security held hereunder to the transferee who shall thereupon become vested with all the powers and rights above given to the payee in respect to the collateral security transferred and the payee shall thereafter be forever released and discharged of and from any and all liability or responsibility to the undersigned for or on account of the collateral security so delivered and the payee shall retain all powers and rights with respect to the collateral security not so delivered.

DW Note (DWD-LSB&WAS)rev01.doc

If this Note be not paid when due or in the event of a default or acceleration in accordance with the terms hereof, and if it be placed with an attorney for collection, the maker agrees to pay all costs of collection, including reasonable attorney's fees, which costs shall be added to the amount due under this Note and shall be recoverable with the amount due under this Note. Said costs shall be in addition to all costs and disbursements allowed by the statutes of the Commonwealth of Massachusetts.

In the event that any notice shall be given hereunder, it shall be sent by registered or certified mail, postage prepaid, in the case of the maker to such address as is known to the payee, and in the case of the payee to 1501 Farm Credit Drive, Suite 2500, McLean, Virginia 22102 or, in the case of either party, to such address as is subsequently indicated in writing to the other party.

This Note has been executed under seal on the day and year first above written.

DRAPER WOODS DEVELOPMENT, LLC

By:_____
    Mark W. Judson, Manager

By:_____
    William A. Swiacki, Jr., Manager


Jointly and Severally Guaranteed By:

_____
Mark W. Judson


_____
William A. Swiacki, Jr.


This Note is secured by a mortgage on certain real estate located within the Draper Woods Subdivision, Sturbridge, Worcester County, Massachusetts, duly recorded with the Worcester District Registry of Deeds, said real estate being more particularly described in Exhibit A attached hereto.

DW Note (DWD-LSB&WAS)rev01.doc

**EXHIBIT A**
**LEGAL DESCRIPTION**


*Attach legal description to be used with related mortgage*
*(same as Hometown mortgage legal but with Lot 46 added and Phase 1 lots excepted)*

**EXHIBIT B**
**LOT RELEASE PAYMENTS**

For so long as there are any outstanding amounts due under the terms of the Note, the amount to be paid for the release of each finished building lot within Phases 2 and 3 of the Draper Woods Subdivision shall be determined as follows:

20% of Net Sales Proceeds Available for Loan Repayment ("Available Proceeds"), as defined below, from the sale of each such finished building lot sold.

For each such finished building lot sold, Available Proceeds shall equal 90% of Net Sales Proceeds, where Net Sales Proceeds equals the total sales price of the finished building lot minus Selling Expenses. Selling Expenses shall include usual and customary closing expenses, including Registry of Deeds tax stamps and recording fees, and legal expenses related to preparation of sales documents and closing, but shall not include sales commissions or seller mortgages. With respect to Lot 38 only, Selling Expenses shall also include the payment of any outstanding amounts due at closing under the terms of an existing mortgage to Keniston Development Corporation dated October 31, 2003 and recorded in WDRD Book 32174, Page 134.

Lot release payments shall be paid at the time of closing on each lot, and shall be applied first to accumulated interest on the outstanding balance of the loan and then to the outstanding principal balance of the loan.

DW Note (DWD-LSB&WAS)rev01.doc

Bk: 33926 Pg: 327

6

2004 00111320
Bk: 33926 Pg: 327   Doc: MTG
Page: 1 of 4   09/21/2004 04:21 PM

Hobbs Abstract Co.
Book _____ Page _____
Keogh Special

# MORTGAGE

**DRAPER WOODS DEVELOPMENT, LLC**, a Massachusetts limited liability company with its principal office at 54 Main Street, 2nd Floor, Sturbridge, Worcester County, Commonwealth of Massachusetts (the "Mortgagor"), FOR CONSIDERATION PAID, hereby GRANTS to **LESLIE S. BAILEY**, of 11800 Champion Road, Fairhope, Baldwin County, State of Alabama, and **WILLIAM A. SWIACKI, JR.**, of 938 Leigh Mill Road, Great Falls, Fairfax County, State of Virginia, as TENANTS IN COMMON (the "Mortgagee"), with MORTGAGE COVENANTS to secure the payment of **Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.00)** at the times, in the manner and with interest, all as provided in a certain note of even date from Mortgagor to Mortgagee (the "Note"), and also to secure the performance of all covenants and agreements herein and in the Note, and any and all other obligations due from Mortgagor to Mortgagee whether now existing or hereafter arising, the real estate described in <u>Exhibit A</u> attached hereto and made part hereof (the "Premises"), together with all equipment and fixtures owned by the Mortgagor now or hereafter thereon which are a part of the realty.

Mortgagor covenants and agrees with the Mortgagee as follows:

1.     To pay the Note pursuant to its terms;

2.     To pay prior to the time when interest starts to accrue all taxes, charges, assessments and all water and sewer charges assessed on the Premises or on any interest therein and to provide, by such time, evidence of such payment satisfactory to holder;

3.     To keep the Premises in good repair, order, and condition, and not to commit or suffer any strip or waste thereof, or any act thereon tending to harm the Premises whether or not such act may constitute waste, it being expressly understood that construction work to improve the Premises is permitted;

4.     In case of a taking of the Premises or any part thereof by any public authority pursuant to the power of eminent domain, the proceeds of all judgments and awards of damages and of all settlements made by the parties in interest shall be paid to the holder, and, at the holder's option, may be applied in whole or in part to the payment of the debt secured hereby or the holder may release the same to the owner of the Premises;

5.     To keep, observe and satisfy all the obligations on the part of the lessor to be kept, performed and satisfied under every lease from time to time in force with respect to the Premises, and, at any time upon notice from the holder, to submit to the holder for examination all leases and on the demand of the holder, to assign and deliver to the holder any or all of such leases, or the rents and profits thereof, such assignments to be in form satisfactory to the holder;

6.     Not to purchase any equipment, fixtures or materials now or hereafter used in connection with or becoming a part of the realty whether by agreement of the parties or otherwise which are subject to a security interest in favor of others unless the prior written consent thereto has been obtained from the holder;

7.     To permit the holder or the holder's representative to examine the Premises at any reasonable time;

8.     If this mortgage, by its terms, is now, or at any time, subject or subordinate to a prior mortgage or mortgages, (a) not to agree, without the consent of the holder, to the modification, amendment or extension of the terms or conditions of such prior mortgage or mortgages and (b) to comply with the terms of such prior mortgage or mortgages, the holder hereof having the right to cure any default under a prior mortgage and to add to the debt secured by this mortgage the reasonable costs of curing such default.

9.     On the request of the holder, to furnish a written statement, signed and, if requested, acknowledged, setting forth the amount of the indebtedness which the Mortgagor acknowledges to be due on the Note and under this mortgage, specifying any claims or offset or defense which the Mortgagor

*(left margin, vertical text)* Draper Woods Subdivision, Brookfield Road and Clark Road, Sturbridge, MA
PB 767/108 + PB 772/107

(4)



Page 1 of 4

DW Mtg (DWD-LSB&WAS)rev01.doc

Return to:
Jeffrey M. Chasse, Esq., Chasse & Roche, P.C.
69 Hall Rd, Sturbridge, MA 01566

asserts against the indebtedness secured hereby or any obligations to be paid or performed hereunder, and the then state of facts relative to the condition of the Premises;

10.    In case any default in any covenant or condition of this mortgage, the Note or other agreements herein referred to, if any, shall exist: the entire mortgage debt shall become due at the option of the holder; the holder shall have the right to enter immediately upon and take possession of the Premises without consent of the owner thereof and without the commencement of any action to foreclose this mortgage, the holder shall have the further right, with or without such possession, to collect and receive all rents, issues, and profits arising out of or in connection with the Premises and to apply the same (after the payment of all necessary charges and expenses in connection with the operation of the Premises, including any managing agent's commission) toward any sums due the holder under the terms hereof and of the Note, and the holder, to cure such default, may apply any deposits or any sums credited by or due from the holder to Mortgagor (without being first required to enforce any other rights of the holder against Mortgagor, or against the Premises),

11.    In the event that title to the Premises become vested in anyone other than Mortgagor, the entire mortgage debt shall, at the option of the holder, become due and payable on demand, however, the holder may without notice to Mortgagor deal with such successor in interest with reference to this mortgage, the Premises and the debt hereby secured, in the same manner as with Mortgagor, without in any way discharging the liability of the Mortgagor or of any endorser or guarantor under the mortgage or upon the debt hereby secured;

12.    No forbearance on the part of the holder, and no change, modification or extension, whether oral or in writing, of the time or manner for the payment of the whole or any part of the debt hereby secured or change in the interest rate on said debt, or any other indulgence given by the holder to any persons other than Mortgagor, shall operate to release or in any manner affect the original liability of Mortgagor or of any endorser or guarantor, notice of any such change, modification, extension, or indulgence being waived;

13.    In case of a foreclosure sale, the holder shall be entitled to retain the costs, charges, and expenses incurred by the holder or allowed under the Statutory Power of Sale, in the event of redemption prior to foreclosure sale, the holder shall be entitled to add its costs and expenses to the principal sum secured hereby;

14.    That the holder is authorized: to pay all taxes, charges, assessments, and water and sewer charges with interest, costs and charges accrued thereon, which may at any time be a lien upon the Premises or any part thereof, to pay the premiums for any policies of insurance required hereunder; to incur and pay reasonable expenses in protecting its rights hereunder and the security hereby granted including, without limitation, expenses for repairs to the Premises and attorneys' fees in connection with the enforcement or protection of any right or interest of the holder hereunder and under the Note; to pay any sums and incur any expenses required to be made or necessary to cure any defaults under any prior mortgage or encumbrance; to pay any sums required in order to obtain a discharge of any security interest of others in any equipment, fixtures, or materials comprising part of the Premises, all in the event that such payments have not been made by Mortgagor as herein provided; and to add all amounts so paid to the principal sum secured hereby; and to apply to any of the foregoing purposes or to the repayment of any amounts so paid by the holder any sums held hereunder by Mortgagee;

15.    The holder in the exercise of the power of sale herein given may sell the entire Premises or any part thereof, in any order, as elected by the holder in its sole discretion, and in case the holder elects to sell in parcels, the sales of such parcels may be held from time to time and the power shall not be exhausted until all of the Premises not previously released shall have been sold;

16.    The Mortgagee covenants and agrees with the Mortgagor from time to time upon reasonable advance written notice from the Mortgagor in each instance to execute partial releases of the Mortgage as to individual finished building lots to be developed by Mortgagor on the Premises as the Mortgagor shall designate in the notice, provided the Mortgagor pays first to the Mortgagee an amount

DW Mtg (DWD-LSB&WAS)rev01.doc

for each such building lot to be determined as set forth in the Note, and provided further that the Mortgagor at the time of the notice is in full compliance with all covenants of the Mortgagor hereunder and not otherwise in default as to his obligations under the Mortgage and Note, and as to his obligations under any other agreements between Mortgagor and Mortgagee; the cost of preparation of said releases to be borne by the Mortgagor and paid to the Mortgagee on receipt of said releases;

    17.    The word "holder" as used herein shall be construed as descriptive of Mortgagee named herein and of any subsequent holder or holders hereof, the word "Mortgagor" as used herein shall be construed as descriptive of Mortgagor named herein and of any subsequent owner or owners of the equity of redemption of the Premises; and all of the covenants and agreements of Mortgagor herein contained shall be binding upon the heirs, executors, administrators, successors and assigns of Mortgagor.

    This MORTGAGE is upon the STATUTORY CONDITION, and upon the further condition that all covenants and agreements of Mortgagor herein and in the Note contained shall be kept and fully performed, for any breach of which the holder hereof shall have, with respect to the real property, the STATUTORY POWER OF SALE.

    Executed under seal this 21st day of June, 2004.

DRAPER WOODS DEVELOPMENT, LLC

By: _____
    Mark W. Judson, Manager

By: _____
    William A. Swiacki, Jr., Manager

### COMMONWEALTH OF MASSACHUSETTS

Worcester, ss

    On this 21 day of June____, 2004, before me, the undersigned notary public, personally appeared Mark W. Judson and William A. Swiacki, Jr., proved to me through satisfactory evidence of identification, which were their drivers' licenses, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose as Managers of Draper Woods Development, LLC, a Massachusetts limited liability company.

_____, Notary Public

My Commission Expires:

MARK A. ERLICH
Notary Public
Commonwealth of Massachusetts
My Commission Expires Oct 29, 2004

Bk: 33926 Pg: 330

# EXHIBIT A
## LEGAL DESCRIPTION

Those three (3) certain roadways and fifty-one (51) certain parcels of land comprising a definitive subdivision of land known as Draper Woods and located in Sturbridge, Worcester County, Massachusetts, said roadways and parcels being more particularly shown as Draper Woods Road, Harding Lane and Eliot Lane, Lots 1, 2R, 3R and 4 through 46, inclusive, Open Space Parcels OS-1 and OS-2, and Detention Basin Parcels DB-1, DB-2 and DB-3 on a plan entitled "Definitive Subdivision Plan for Draper Woods in Sturbridge, Massachusetts (Worcester County)" dated November 26, 2001, last revised February 28, 2003, prepared by Waterman Design Associates, Inc., and recorded in Worcester District Registry of Deeds ("WDRD") Plan Book 792, Plan 107;

Said three (3) roadways and fifty-one (51) parcels comprising a total area of 55.97± acres;

Said total area being bounded as follows: to the west by said Brookfield Road (a.k.a. Route 148), by land of now or formerly of Raymond R. Stevens, Jr., and Patricia T. Stevens, and by said Brookfield Road; to the north by land now or formerly of the Massachusetts Turnpike Authority (being the Massachusetts Turnpike, a.k.a. Interstate 90); to the east by said Clark Road and by lands now or formerly of William W. Laythe and Christine M. Laythe, of John W. Grudzien and Judith A. Grudzien, of Jean L. Peloquin and Michael F. Brandmeyer, of Jeffrey W. Heller and Jan M. Heller, and of Jane E. Simpson; and to the south by lands now or formerly of said Simpson, and of Dennis Rearick and Ellen Rearick;

Said total area being the same premises conveyed this day to Draper Woods Development, LLC, by deeds dated June 9, 2004, and recorded in WDRD Book 33926 , Pages 305 and 310 ;

Said total area being subject to an Order of Conditions recorded in WDRD Book 31951, Page 24.

EXCEPTING THEREFROM said Lots 1 through 14, inclusive, on Plan Book 792 Plan 107.

DW Mtg (DWD-LSB&WAS)rev01.doc

ATTEST: WORC. Anthony J. Vigliotti, Register



Bk: 37100 Pg: 68   Doc: SUB
Page: 1 of 1   08/19/2005 10:07 AM

## SUBORDINATION AGREEMENT

Hobbs Abstract Co.
Book_____ Page_____
Keogh spec.

### KNOW ALL MEN BY THESE PRESENTS THAT:

**LESLIE S. BAILEY** and **WILLIAM A. SWIACKI, JR.**, as present legal holders and owners of that certain mortgage dated June 21, 2004 executed by **DRAPER WOODS DEVELOPMENT, LLC**, as Mortgagor, recorded with Worcester District Registry of Deeds in Book 33926, Page 327, and concerning the real property located at the Draper Woods Subdivision, Brookfield Road and Clark Road, Sturbridge, Worcester County, Massachusetts, for and in consideration of the sum of **One Dollar and Other Valuable Consideration** to them paid in hand, the receipt of which is hereby acknowledged, have, and by these presents do waive and subordinate the priority of the lien of said Mortgage insofar as the following described mortgage is concerned, but not otherwise:

That certain Mortgage dated August 18, 2005, by Draper Woods Development, LLC, to Hometown Bank, as Mortgagee, securing the payment of a note in the amount of $2,500,000.00, said Mortgage being recorded with Worcester District Registry of Deeds in Book 37100, Page 53.

The undersigned, Leslie S. Bailey and William A. Swiacki, Jr., hereby consent that the lien of the Mortgage first above described be taken as second and inferior to Mortgage above described.

**IN WITNESS WHEREOF** the said LESLIE S. BAILEY and WILLIAM A. SWIACKI, JR., have caused this instrument to be signed and sealed this 11th day of August, 2005.

_____
Leslie S. Bailey

_____
William A. Swiacki, Jr.

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.                                      August 11, 2005

On this 11th day of August, 2005, before me, the undersigned notary public, personally appeared WILLIAM A. SWIACKI, JR., proved to me through satisfactory evidence of identification, which was through personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Jeffrey M. Chasse, *Notary Public*
*My Commission expires: October 15, 2010*

Post Closing
HOMETOWN BANK
31 SUTTON AVE
OXFORD MA 01540

**ATTEST: WORC. Anthony J. Vigliotti, Register**

# EXHIBIT A-2

**Bob Riccio**

| | |
|---|---|
| **From:** | Robert Matthews [RCM@lpclaw.com] |
| **Sent:** | Tuesday, February 03, 2009 9:38 AM |
| **To:** | Bob Riccio |
| **Subject:** | Here are some executed docs. |
| **Attachments:** | DW PMMLoanModAgrt(signed).pdf; DW PMMNoteExtension(WASjrLSBsigned).pdf |

Or, at least partially executed.

# Lyons, Pipes & Cook
**Robert C. Matthews, Esq.**
2 North Royal Street
Mobile, AL 36602
- direct    251.441.8219
- main     251.432.4481
- fax       251.433.1820
Visit our website www.LPClaw.com

**CIRCULAR 230 NOTICE**
TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY STATEMENTS CONTAINED IN THIS DOCUMENT (INCLUDING ANY ATTACHMENTS) ARE NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY YOU OR ANY OTHER TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER FEDERAL TAX LAW.

| Confidentiality Note | Our Firm | Practice Areas | Attorneys | Clients | Publications | Employment | Seminars |

1

## LOAN MODIFICATION AGREEMENT

For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** (also known as **LESLIE C. SWIACKI**) and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note dated June 21, 2004 in the principal amount of $480,000.00 hereby agree that (a) the maturity date therein shall be extended to August 15, 2009, and (b) Exhibit B to said Note shall be deleted in its entirety and be replaced by the revised Exhibit B attached hereto and made part hereof.

All other terms of said Promissory Note are hereby ratified and confirmed.

This agreement may be executed in counterparts, which, taken in the aggregate, shall constitute an original agreement.

WITNESS our hands and seals this 14th day of May, 2008.

DRAPER WOODS DEVELOPMENT, LLC

_____
Witness

By:_____
Mark W. Judson, Manager

_____
Witness

By:_____
William A. Swiacki, Jr., Manager

_____
Witness

_____
Leslie S. Bailey (a/k/a Leslie C. Swiacki)

_____
Witness

_____
William A. Swiacki, Jr.

## LOAN MODIFICATION AGREEMENT

For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** (also known as **LESLIE C. SWIACKI**) and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note dated June 21, 2004 in the principal amount of $480,000.00 hereby agree that (a) the maturity date therein shall be extended to August 15, 2009, and (b) Exhibit B to said Note shall be deleted in its entirety and be replaced by the revised Exhibit B attached hereto and made part hereof.

All other terms of said Promissory Note are hereby ratified and confirmed.

This agreement may be executed in counterparts, which, taken in the aggregate, shall constitute an original agreement.

WITNESS our hands and seals this 14th day of May, 2008.

DRAPER WOODS DEVELOPMENT, LLC

_____
Witness

By:_____
Mark W. Judson, Manager

_____
Witness

By:_____
William A. Swiacki, Jr., Manager

_____
Witness

_____
Leslie S. Bailey (a/k/a Leslie C. Swiacki)
By WILLIAM A. SWIACKI, JR, ATTORNEY IN FACT

_____
Witness

_____
William A. Swiacki, Jr.

**EXHIBIT B**
**LOT RELEASE PAYMENTS**
(as revised May 14, 2008)

For so long as there are any outstanding amounts due under the terms of the Note, the amount to be paid for the release of each finished building lot within Phases 2 and 3 of the Draper Woods Subdivision shall be determined as follows:

> 100% of Net Sales Proceeds Available for Junior Loan Repayment ("Available Junior Proceeds"), as defined below, from the sale of each such finished building lot sold.

For each such finished building lot sold, Available Junior Proceeds shall equal 100% of Net Sales Proceeds After Senior Loan Repayment, where Net Sales Proceeds After Senior Loan Repayment equals the total sales price of the finished building lot minus Selling Expenses and Senior Loan Payments. Selling Expenses shall include usual and customary closing expenses, including Registry of Deeds tax stamps and recording fees, legal expenses related to preparation of sales documents and closing, and sales commissions. Senior Loan Payments shall include required lot release payments on any and all senior mortgage loans, including but not limited to the payment of any amounts due at closing of such lot under the terms of (a) an existing loan agreement with Hometown Bank dated August 18, 2005, modified on October 18, 2007, and secured by a mortgage recorded in Worcester District Registry of Deeds ("WDRD") Book 37100, Page 53, and (b) an existing mortgage note to Keniston Development Corporation dated October 31, 2003, modified on March 3, 2008, and secured by a mortgage recorded in WDRD Book 32174, Page 134.

Lot release payments shall be paid at the time of closing on each lot, and shall be applied first to accumulated interest on the outstanding balance of the loan and then to the outstanding principal balance of the loan.

## COMMONWEALTH OF VIRGINIA

Fairfax, ss

On this __14__ day of ____MAY____, 2008, before me, the undersigned notary public, personally appeared William A., Swiacki, Jr., proved to me through satisfactory evidence of identification, which was through personal knowledge / state-issued driver's license / other:__VADS24-65-4181__, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose individually, as attorney-in-fact for Leslie S. Bailey (a/k/a Leslie C. Swiacki), and as Manager of Draper Woods.Development, LLC.

_____, Notary Public

My Commission Expires: 12/31/2009.

Latifeh Hassanzadeh
Notary Public
Commonwealth of Virginia
My Commission Expires 12/31/2009
Commission ID# 296840

PROMISSORY NOTE EXTENSION

For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note dated June 21, 2004 in the principal amount of $480,000.00 hereby agree that the maturity date therein shall be extended to August ____, 2007.

All other terms of said Promissory Note are hereby ratified and confirmed.

WITNESS our hands and seals this 11th____ day of August, 2005.

                    DRAPER WOODS DEVELOPMENT, LLC

                    By_____
                        Mark W. Judson, Manager
                    By_____
                        William A. Swiacki, Jr., Manager

                    _____
                    Leslie S. Bailey

                    _____
                    William A. Swiacki, Jr.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLIE C. SWIACKI, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| WILLIAM A. SWIACKI, JR., | * | Case No. 09-348-WS |
| SWIACKI TRUST MANAGEMENT | * | |
| COMPANY, DRAPER WOODS | * | |
| DEVELOPMENT, LLC, and MARK W. | * | |
| JUDSON, | * | |
| | * | |
| Defendants. | * | |

**AFFIDAVIT IN SUPPORT OF**
**PLAINTIFF'S REPLY BRIEF IN RESPONSE TO**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

STATE OF ALABAMA    :

COUNTY OF MOBILE    :

    Appearing before me, David R. Quittmeyer, who being by me first duly sworn, stated on his oath as follows:

    1.    I am the attorney of record for Plaintiff, Leslie C. Swiacki, and I have personal knowledge of the facts set out herein.

    2.    On March 11, 2009, I sent a letter to Thomas F. Garth of the law firm Lyons, Pipes & Cook, counsel for Bill Swiacki, requesting written assurances that Leslie would be paid the full amount due to her for her loan to Draper Woods. I received no response to this request from Mr. Garth.

    3.    At 12:57 PM on August 4, 2009, I received an e-mail from Walter M. Cook, Jr. of the law firm Lyons, Pipes & Cook, also counsel for Bill Swiacki, stating the following in regard

to Leslie's share of the loan she made to Draper Woods: "I am quite certain that there are no funds to pay your client under the documents."

4.      Shortly thereafter, at 4:14 PM, I received a second e-mail from Mr. Cook requesting Leslie to provide a partial release of her mortgage on a certain parcel of land located in the Draper Woods subdivision that was then serving as security for her loan to Draper Woods, the same loan that Mr. Cook stated would not be repaid.

FURTHER Affiant sayeth not.

DAVID R. QUITTMEYER

SWORN TO and SUBSCRIBED before me this 15th day of January, 2010.

NOTARY PUBLIC

My Commission Expires: 12-20-2011

Notary Public, State of Alabama at Lc
My Commission Expires: 12/20/201
Bonded through Western Surety Comp

[SEAL]

1034194_1.doc