IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LESLIE C. SWIACKI,              :

    Plaintiff,               :

vs.                             :         CA 09-0348-C

WILLIAM A. SWIACKI, JR.,        :
et al.,
                                :
    Defendants.

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on plaintiff's motion for partial summary judgment (Doc. 34; *see also* Doc. 35), the response of William A. Swiacki, Jr. (Doc. 54),[1] and plaintiff's reply brief (Doc. 62). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of the instan t motion for summary judgment. (Docs. 12 & 13 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case,

---

[1] On January 5, 2010, defendant William A. Swiacki, Jr. filed a motion to allow and notice of filing of original affidavit in opposition to the motion for partial summary judgment (Doc. 56). To the extent a ruling is required with respect to this pleading, same is hereby **GRANTED**.

including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the contents of the briefs, attachments to the briefs, and all other pertinent pleadings, the Court **DENIES** plaintiff's motion for partial summary judgment (Doc. 34).[2]

## **FINDINGS OF FACT**

1.  On June 21, 2004, Leslie Swiacki and Bill Swiacki made a $480,000 ($240,000 attributable to each) purchase money loan[3] to Draper Woods Development, LLC ("Draper Woods"). (*Compare* Doc. 35, Affidavit of Leslie Swiacki, at ¶¶ 2-3 *with* Doc. 56, Bill Swiacki aff., at ¶¶ 1-2) As partial security therefor, a promissory note was apparently entered into on June 21, 2004. (Doc. 35, Exhibit A to Leslie Swiacki aff.)

> FOR VALUE RECEIVED, the undersigned, **DRAPER WOODS DEVELOPMENT, L.L.C.,** a Massachusetts limited liability company, with its principal office at 54 Main Street, 2nd Floor, Sturbridge, Worcester County, Commonwealth of Massachusetts (the "maker") promises to pay to **LESLIE S. BAILEY**, of 11800 Champion Road, Fairhope, Baldwin County, State of Alabama, and **WILLIAM A. SWIACKI, JR.,**

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 12 & 13 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

[3] There was no actual cash contribution of $240,000 by plaintiff. (*See* Doc. 56, Affidavit of William A. Swiacki, Jr., at ¶ 2)

of 938 Leigh Mill Road, Great Falls, Fairfax County, Commonwealth of Virginia, as TENANTS IN COMMON (the "payee"), or order in care of William A. Swiacki, Jr., 1501 Farm Credit Drive, Suite 2500, McLean, Virginia 22102 or such other places as may be designated in writing by the holder of this Note, the principal sum of **Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.00)**, as follows: (a) One Hundred Thousand and 00/100 Dollars ($100,000.00) in thirty (30) days (i.e., on or before July 21, 2004), and (b) Three Hundred Eighty Thousand and 00/100 Dollars ($380,000.00) in twenty-four months (i.e., on or before June [21], 2006), all with interest on the unpaid balance from the date hereof at the rate of ten percent (10%) per annum, which interest is payable annually on the unpaid balance until fully paid. The entire principal balance, together with any interest then unpaid, is due twenty-four (24) months from the date hereof.

This NOTE may be prepaid in whole or in part at any time without premium or penalty. All prepayments shall be applied first to interest, then to principal payments in the order of their maturity. With reference to Paragraph 16 of the below-referenced mortgage, (a) the amount required for release of individual finished building lots within Phases 2 and 3 of the Draper Woods Subdivision, said Phase 2 and Phase 3 lots being Lots 15-45, inclusive, as more particularly described in Exhibit A attached hereto and made part hereof, shall be as set forth in Exhibit B attached hereto and made part hereof, and (b) the amount required for release of Lot 46 as more particularly described in said Exhibit A shall be the principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) plus accrued interest on said principal amount.

This NOTE shall, at the option of the holder, become immediately due [and] payable without notice or demand by the holder to the maker upon the occurrence of any of the following events:

       1.     Failure of the maker to pay when due any payment

of principal or interest herein required;

  2. Default, continuing for more than thirty (30) days by the maker, under any mortgage, agreement or undertaking securing in any way the indebtedness hereby evidenced or given in connection herewith;

  3. Default under any prior mortgage encumbering the Premises not cured within the applicable grace periods;

  4. Death, dissolution or termination of existence of the maker or of any endorser or guarantor hereon;

  5. The making of an assignment for the benefit of creditors, insolvency, appointment of a receiver of any part of the property of, or the filing of a petition in bankruptcy, or the commencement of any proceedings under any bankruptcy or insolvency law or any law relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension, by or against the maker or any endorser or guarantor hereon.

  While any default exists in the making of any payments required by this Note (including final payment upon maturity) or in the performance or observance of any of the covenants, agreements or conditions of this Note or of any instrument now or hereafter evidencing or securing the indebtedness evidence hereby, the maker further promises to pay, on each payment date, an additional five percent (5%) on the amount then due and in arrears and the payment of such additional amount which has accrued shall be a condition precedent to the curing of any default.

  The maker and all endorsers and guarantors of the Note hereby waive presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, generally waive all suretyship defenses, assent to any extension

or postponement of the time of payment or any other indulgences and to the addition or release of any party or person primarily or secondar[il]y liable including the maker.

The maker and all endorsers and guarantors of this Note hereby assent to the release in whole or in part of any collateral held by the payee of this Note as security for the payment of this Note.

The rights, powers, privileges and remedies of the holder of this Note are cumulative and not exclusive of any right, power, remedies and privileges which the holder might have under any other agreement now in effect or hereafter entered into between the maker and the payee and the failure to assert any power, right or remedy shall not be deemed to be a waiver or election.

This Note is transferable by any holder by endorsement or assignment in writing. The holder of this Note may negotiate, assign and transfer this Note and may deliver all or any part of the collateral security held hereunder to the transferee who shall thereupon became vested with all the powers and rights above given to the payee in respect to the collateral security transferred and the payee shall thereafter be forever released and discharged of and from any and all liability or responsibility to the undersigned for or on account of the collateral security so delivered and the payee shall retain all powers and rights with respect to the collateral security not so delivered.

If this Note be not paid when due or in the event of a default or acceleration in accordance with the terms hereof, and if it be placed with an attorney for collection, the maker agrees to pay all costs of collection, including reasonable attorney's fees, which costs shall be added to the amount due under this Note and shall be recoverable with the amount due under this Note. Said costs shall be in addition to all costs and disbursements allowed by the statutes of the Commonwealth of Massachusetts.

> In the event that any notice shall be given hereunder, it shall be sent by registered or certified mail, postage prepaid, in the case of the maker to such address as is known to the payee, and in the case of the payee to 1501 Farm Credit Drive, Suite 2500, McLean, Virginia 22102 or, in the case of either party, to such address as is subsequently indicated in writing to the other party.

(*Id.*) The promissory note, on its face, indicates that same was being executed on June 21, 2004, in Sturbridge, Massachusetts by Mark W. Judson and William A Swiacki, Jr. on behalf of Draper Woods and, as well, jointly and severally guaranteed by Judson and Bill Swiacki; however, the document contains no signatures and, in fact, none of the parties in this lawsuit have produced a copy of the promissory note containing the signatures of Judson and Bill Swiacki. (*See id.*; *cf.* Doc. 62, Affidavit of Robert J. Riccio, at ¶¶ 2-5 (plaintiff's counsel received in discovery only an unexecuted copy of the promissory note but after originally receiving only unexecuted copies of the loan modification agreement and promissory note extension plaintiff's counsel received executed copies of those two documents identical to the unexecuted copies))

        2.        The unexecuted June 21, 2004 promissory note states on its face that it was being "secured by a mortgage on certain real estate located within the Draper Woods Subdivision, Sturbridge, Worcester County, Massachusetts,

duly recorded with the Worcester District Registry of Deeds[.]" (Doc. 35, Exhibit A to Leslie Swiacki aff., at 4) The mortgage was executed by the managers of Draper Woods, that is, Mark Judson and Bill Swiacki, Jr.,[4] in Sturbridge, Massachusetts on June 21, 2004. (Doc. 35, Exhibit A to Leslie Swiacki aff., **MORTGAGE**, at 3; *see also id.* at 1 ("**DRAPER WOODS DEVELOPMENT, LLC,** a Massachusetts limited liability company with its principal office at 54 Main Street, 2nd Floor, Sturbridge, Worcester County, Commonwealth of Massachusetts (the "Mortgagor"), FOR CONSIDERATION PAID, hereby GRANTS to **LESLIE S. BAILEY**, of 11800 Champion Road, Fairhope, Baldwin County, State of Alabama, and **WILLIAM A. SWIACKI, JR.**, of 938 Leigh Mill Road, Great Falls, Fairfax County, Commonwealth of Virginia, as TENANTS IN COMMON (the "Mortgagee"), with MORTGAGE COVENANTS to secure the payment of **Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.00)** at the times, in the manner and with interest, all as provided in a certain note of even date from Mortgagor to Mortgagee (the "Note"), and also to secure the performance of all covenants and agreements herein and in the Note, and any and all other obligations due from Mortgagor to Mortgagee whether now

---

[4] *See* Doc. 56, Bill Swiacki aff., at ¶ 5 & n.5 (Mark Judson and Bill Swiacki were each 50% members and co-managers of Draper Woods).

existing or hereafter arising, the real estate described in Exhibit A attached hereto and made part hereof (the "Premises"), together with all equipment and fixtures owned by the Mortgagor now or hereafter thereon which are a part of the realty."))

3.     On May 14, 2008, Bill Swiacki, using a durable power of attorney, executed a Loan Modification Agreement for renewal and extension of the payment of the promissory note. (*See* Doc. 62, Exhibit A-2, Loan Modification Agreement)

> For Value Received, the undersigned, **DRAPER WOODS DEVELOPMENT, LLC** (the "maker") and **LESLIE S. BAILEY** (also known as **LESLIE C. SWIACKI**) and **WILLIAM A. SWIACKI, JR.** (the "payee") under that certain Promissory Note date June 21, 2004 in the principal amount of $480,000.00 hereby agree that (a) the maturity date therein shall be extended to August 15, 2009, and (b) Exhibit B to said Note shall be deleted in its entirety and be replaced by the revised Exhibit B attached hereto and made part hereof.
>
> All other terms of said Promissory Note are hereby ratified and confirmed.

(*Id.*)

4.     On March 11, 2009, one of plaintiff's attorneys wrote a letter to counsel for Bill Swiacki requesting written assurances that plaintiff would be paid the full amount due her based upon the aforementioned purchase money loan made to Draper Woods. (*See* Doc. 62, Exhibit B, Affidavit of David R.

Quittmeyer, at ¶ 2) Plaintiff's counsel received no response to this letter. (*Id.*)[5]

5. Plaintiff filed her complaint in this Court initially against only her brother, William A. Swiacki, Jr., and Swiacki Trust Management Company. (*See* Doc. 1)

6. On August 4, 2009, counsel for plaintiff received an email from one of the attorneys representing Bill Swiacki which stated the following regarding plaintiff's share of the purchase money loan made to Draper Woods: "'I am quite certain that there are no funds to pay your client under the documents.'" (Doc. 62, Exhibit B, Quittmeyer aff., at ¶ 3)

7. On October 1, 2009, plaintiff filed her first amended complaint, adding as parties defendant Draper Woods and Mark W. Judson, and asserting as Count Seven against Draper Woods, Bill Swiacki and Judson breach of Promissory Note and Guaranties. (Doc. 22, at 1 & 13) "Defendants Draper Woods, William Swiacki, and Judson have defaulted under the Note and guaranties, and each of them owes the plaintiff the full amount due to her thereunder, including all lawful costs, charges, late fees, and attorney's fees." (Doc. 22, at ¶ 72; *see also* Doc. 64, at ¶ 76 (plaintiff's second amended

---

[5] *See* Doc. 56, Bill Swiacki aff., at ¶ 9 ("Beginning in February 2009, [Leslie] indicated that she would be expecting full payment of her share of the loan on the August 15, 2009 maturity date established by the loan modification agreement dated May 14, 2008.").

9

complaint wherein she makes the same allegations in Count Seven))

      8.     Plaintiff filed her motion for partial summary judgment on November 30, 2009 (Doc. 34; *see also* Doc. 35), therein seeking judgment in her favor on Count Seven of the complaint, as amended, against defendants Bill Swiacki and Draper Woods. (*See id.*) In response to plaintiff's motion, defendant Bill Swiacki does not deny the existence of a promissory note or that plaintiff is owed money under same. (*See* Doc. 56, Bill Swiacki aff., at ¶ 11) Instead, it is defendant Swiacki's contention that because no executed copy of the promissory note has been produced, he is unable to determine if it was executed in the form alleged by plaintiff and, as a result, cannot determine the amount owed. (*Id.*) "Also, there is no proof that Leslie should be awarded 15% per annum interest, late charges, expenses and costs of collection, including attorneys' fees and court costs. . . . There is no showing of the interest rate allowed by the Commonwealth of Massachusetts or the Commonwealth of Virginia on a promissory note or the amount allowed with respect to attorney fees and expenses." (*Id.* at ¶¶ 11 & 13) In his brief in opposition to the motion for partial summary judgment, Bill Swiacki cites to some cases from Virginia regarding unexecuted copies of promissory notes and intent behind such notes. (*See* Doc. 54, at 3-4)

## **CONCLUSIONS OF LAW**

**A.     Summary Judgment Standard**.

1.     Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.");[6] *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

2.     The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

---

[6]     The substantive law will identify which facts are material.  477 U.S. at 248, 106 S.Ct. at 2510.  The Supreme Court concluded in *Anderson* "that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Id*. at 255, 106 S.Ct. at 2514.

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb County,* 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp., supra,* 477 U.S. at 324, 106 S.Ct. at 2553, quoting Fed.R.Civ.P. 56(e)[7]; *see also Allen, supra,* at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the

---

[7] Rule 56(e)(2) now reads, in relevant part, as follows: "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." *Id*.

existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp*., 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc*., 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

3.      In considering whether the plaintiff is entitled to summary judgment, the Court has viewed the facts in the light most favorable to defendant William A. Swiacki, Jr. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra,* 573 F.3d at 1165 (internal citations omitted).

### B.    Choice of Law-Contract.

4.      "'A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits.'" *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citation omitted); *see also Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1115 (11th Cir. 1996) ("In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."). It is clear that "Alabama applies the traditional doctrine[] of *lex loci contractus* to

contract claims . . . . The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the contract. The doctrine states that 'a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.'" *Colonial Life & Accident Ins. Co., supra* (internal citation omitted); *compare id.* and *Industrial Chem. & Fiberglass Corp. v. North River Ins. Co.,* 908 F.2d 825, 829 n.3 (11th Cir. 1990) ("Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern interpretation of the contract. The last act necessary to the execution of the North River policies, the receipt and acceptance of the policies by the named insured, took place in New York." (internal citation omitted)) *with Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.,* 17 So.3d 200, 213 (Ala. 2009) ("Alabama law follows the traditional conflict-of-law principles of *lex loci contractus* . . . . Under the principles of *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made." (internal citation omitted)) and *Stovall v. Universal Constr. Co., Inc.,* 893 So.2d 1090, 1102 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. . . . Lacking such a

contractual specification, we follow the principle of *lex loci contractus*, applying the law of the state where the contract was formed.").

     5.     The parties appear to agree that the unexecuted June 21, 2004 promissory note was made in Massachusetts (*compare* Doc. 56, Bill Swiacki aff., at ¶ 12 ("If the original promissory note for the purchase money loan was executed, it was executed in Massachusetts.") *with* Doc. 62, at 6 n.1 ("Because Alabama law provides that the law of the state where the contract was executed shall govern interpretation of the contract, the last act necessary to the execution of the Note is the determining factor in this analysis. . . . It appears from Bill's affidavit that that place is Massachusetts.")); therefore, the Court finds Massachusetts law, not Virginia or Alabama law, applicable in this case.[8] While the May 14, 2008 loan modification agreement may well have been executed in Virginia and Massachusetts as Bill Swiacki contends (Doc. 56, Swiacki aff., at ¶ 12), Virginia law still has no application because all that document changed was the maturity date of the loan, same being extended to August 15, 2009, a date that has since passed. In fact, the modification agreement specifically ratified and confirmed "[a]ll other terms of said Promissory Note[.]" (Doc. 62, Exhibit A-2, LOAN MODIFICATION

---

[8]     Therefore, defense counsel's citation to Virginia law with respect to the promissory note provides this Court with no guidance or assistance.

16

AGREEMENT)

### C. Plaintiff's Promissory Note Claim.

6. Massachusetts law is clear that "[s]ummary judgment on breach of a promissory note is appropriate once it is established in discovery that there is no genuine issue of material fact regarding the authenticity of the note and the amount due on said note." *Gelfand v. Sorkin*, 2005 WL 3489705, *4 (Mass.Super. October 17, 2005) (citation omitted). "Once the moving party establishes execution, delivery and non-payment on the promissory note, the burden shifts to the defendant to demonstrate by way of affidavit, that there is a genuine issue for trial." *Id.* (citation omitted); *see also First Colonial Bank for Savings v. Webster*, 1993 WL 818626, *2 (Mass.Super. October 12, 1993) ("The maker of a promissory note is obligated to pay the note in accordance with its terms. When a holder produces a note and proves the maker's signature, the maker has the burden of proving a defense to payment." (internal citations omitted)).

7. In light of the requirement under Massachusetts law that the moving party establish execution of the promissory note at issue, plaintiff's inability to locate an executed copy of the promissory note, and William Swiacki's unwillingness to agree that the copy of the promissory note

produced to this Court by plaintiff (having earlier been produced to plaintiff in discovery by defendant Swiacki) "was in fact executed or that it was executed in the form alleged by [the moving party]" (Doc. 54, William Swiacki aff., at ¶ 11), this Court finds itself in the position of having to deny plaintiff's motion for partial summary judgment against William Swiacki and Draper Woods in respect to the promissory note. In this regard, the undersigned would note that while the "unexecuted" June 21, 2004 promissory note presented to the Court would undoubtedly be the best evidence of the substantive provisions and contents of same (*see* Doc. 62, at 3-4), it cannot be said that same is the best evidence of the execution of that promissory note by William Swiacki and Mark Judson as co-managers of Draper Woods or of the joint and several guaranty[9] by Bill Swiacki and Judson. Instead, the best evidence of the execution of that document would be the testimony and/or admissions of Bill Swiacki and/or Mark Judson. *Compare Gelfand, supra,* at *1 & *4 ("The Goldins admit that they signed the promissory note and promised to [p]a[y] Gelfand on January 16, 2002 for the loan. *Yelena Goldin Request for Admissions*; *David Goldin Request for Admissions*. . . . By virtue

---

[9]     *See First Colonial Bank for Savings, supra,* at *2 ("A guaranty imposes upon a guarantor collateral liability for a principal's obligations. If the principal defaults on its obligations, the guarantor must pay in accordance with the guaranty's terms.").

of the defendants' admissions, the existence and authenticity of the promissory notes are admitted.") *with First Colonial Bank for Savings, supra,* at *2 ("Because the bank has produced the note and demanded payment, and Webster has admitted that he executed the note on behalf of the 127 Ocean Street Trust, the bank is entitled to summary judgment against the trust unless the trust raises a genuine issue of material fact regarding a valid defense to payment. . . . Webster executed and delivered a guaranty to the bank in which he 'unconditionally guarant[eed] [the bank] the prompt and full repayment of the principal sum owing on [the note] in accordance with its terms and the terms of the mortgage securing it . . . .' Since the trust defaulted on the note and Webster admits his signature on the guaranty, the bank is also entitled to summary judgment against Webster personally, again unless Webster raises a genuine issue of material fact related to a meritorious defense against payment.").

## CONCLUSION

Based upon the foregoing, the Court **DENIES** plaintiff's motion for partial summary judgment against William Swiacki and Draper Woods as to Count Seven of the complaint, as amended (Doc. 34).

**DONE** and **ORDERED** this the 27th day of January, 2010.

 s/WILLIAM E. CASSADY   
**UNITED STATES MAGISTRATE JUDGE**
